UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY DEAN DUSENBERY,          : CIVIL NO: 1:CV-04-02361
                               :
            Plaintiff          :
                               : (Judge Conner)
      v.                       :
                               : (Magistrate Judge Smyser)
UNITED STATES OF AMERICA and   :
RONALD A. LAINO,               :
                               :
            Defendants         :

**REPORT AND RECOMMENDATION**

I. Background and Procedural History.

The plaintiff, a federal prisoner proceeding *pro se*,
commenced this action by filing a complaint on October 28, 2004.
On January 11, 2005, the plaintiff filed an amended complaint.

The defendants named in the amended complaint are the
United States of America and Ronald A. Laino, the Health Services
Administrator at the United States Penitentiary, Allenwood,
Pennsylvania (USP-Allenwood).

The plaintiff alleges the following facts in his amended
complaint.  In 1991 while incarcerated at the Federal

Correctional Institution in Milan, Michigan, the plaintiff caught scabies from another inmate. He was prescribed a lotion but the lotion was not strong enough to kill the scabies. He continued to complain of scabies but his complaints were not believed or were ignored. The plaintiff was transferred to USP-Allenwood in 2000. He complained to staff at USP-Allenwood that he has scabies. Again, his complaints were ignored.

In February of 2004, the plaintiff complained to defendant Laino that he has scabies and he requested a skin scrape to confirm the presence of scabies. Defendant Laino denied the plaintiff's request for a skin scrape. The plaintiff appealed defendant Laino's denial of a skin scrape to the Warden at USP-Allenwood, then to the Regional Director and General Counsel of the Bureau of Prisons. All of the plaintiff's requests for administrative remedies were denied.

The plaintiff alleges that defendant Laino knew from his medical records that he had been diagnosed with scabies in 1991 and that there is no evidence that the scabies were cured. The plaintiff claims that defendant Laino's denial of his reasonable request for medical treatment has exposed him to undue suffering and establishes that defendant Laino has been deliberately

2

indifferent to his serious medical needs in violation of the Eighth Amendment.

The plaintiff sets forth three claims in his complaint. The first claim is a claim against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The plaintiff claims that the failure of employees of the Bureau of Prisons to diagnose and treat his scabies for thirteen years was negligence and resulted in severe pain and suffering. The second claim is also a claim against the United States pursuant to the FTCA. The plaintiff claims that the failure of employees of the Bureau of Prisons to diagnose and treat his scabies for thirteen years has caused him severe emotional distress. The third claim is a *Bivens* claim against defendant Laino. The plaintiff claims that defendant Laino's denial of a skin scrape exposed him to undue suffering and violated his Eighth Amendment right not to be subject to cruel and unusual punishment.

The plaintiff is seeking damages from the United States and he is seeking compensatory and punitive damages from defendant Laino as well as declaratory and injunctive relief.

On June 14, 2005, the defendants filed a motion to
dismiss the amended complaint or, in the alternative, for summary
judgment.  On June 28, 2005, the defendants filed a statement of
material facts and a brief[1] and documents in support of their
motion.  After requesting and receiving an extension of time, on
August 1, 2005, the plaintiff filed a brief in opposition to the
defendants' motion.[2]   On August 15, 2005, the defendants filed a
reply brief in support of their motion.

II.  *Bivens* Claim against Defendant Laino.


Defendant Laino contends: 1) that the plaintiff is barred
by the statute of limitations from pursuing any claims that arose
prior to October 28, 2002 (two years before he filed his
complaint in this case); 2) that the claim against him in his
official capacity is barred by the sovereign immunity of the
United States; 3) that the plaintiff has failed to establish an

---

1.  The plaintiff contends that the defendants' brief in support of
their motion was not timely filed and, therefore, the motion should
be deemed withdrawn. However, pursuant to Fed.R.Civ.P. 6(a),
excluding intermediate Saturdays and Sundays the defendants' brief
was timely filed.

2.  Also on August 1, 2005, the plaintiff filed a motion for the
appointment of counsel.  The plaintiff's motion for the appointment of
counsel has been denied by a separate order.

Eighth Amendment claim; and 4) that he is entitled to qualified immunity.

We will first address defendant Laino's contention that the plaintiff failed to establish an Eighth Amendment claim against him. Initially, we note that defendant Laino contends that the plaintiff failed to state an Eighth Amendment claim against him and that, therefore, the *Bivens* claim against him should be dismissed. Although contending that the plaintiff failed to state a claim against him, defendant Laino relies on evidence outside the pleadings. Because defendant Laino relied on evidence outside the pleadings, we will treat the motion with respect to the merits of the plaintiff's Eighth Amendment claim as a motion for summary judgment.[3]

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the

---

3.   We note that that is how the plaintiff treated the motion with respect to the merits of his Eighth Amendment claim against defendant Laino. *See doc. 25 at 7-10.*

absence of any genuine issue of material fact, though the non-
moving party must make a showing sufficient to establish the
existence of each element of his case on which he will bear the
burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560,
564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-
23 (1986).

"A factual dispute is material if it bears on an
essential element of the plaintiff's claim, and is genuine if a
reasonable jury could find in favor of the nonmoving party."
*Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580
(3d Cir. 2003). In determining whether an issue of material
fact exists, the court must consider all evidence in the light
most favorable to the non-moving party. *White v. Westinghouse
Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at
the summary judgment stage is not to weigh the evidence and
determine the truth of the matter, but to determine whether there
is a genuine issue for trial." *Federal Home Loan Mortgage Corp.
v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

Local Rule 56.1, Rules of Court, M.D. Pa., provides:

> A motion for summary judgment filed
> pursuant to Fed.R.Civ.P. 56, shall be
> accompanied by a separate, short and concise

statement of the material facts, in numbered
paragraphs, as to which the moving party
contends there is no genuine issue to be tried.
   The papers opposing a motion for summary
judgment shall include a separate, short and
concise statement of the material facts,
responding to the numbered paragraphs set forth
in the statement required in the foregoing
paragraph, as to which it is contended that
there exists a genuine issue to be tried.
   Statements of material facts in support of,
or in opposition to, a motion shall include
references to the parts of the record that
support the statements.
   All material facts set forth in the
statement required to be served by the moving
party will be deemed to be admitted unless
controverted by the statement required to be
served by the opposing party.

The defendants filed a statement of material facts in
support of their motion.   The plaintiff has not filed a response
to the defendants' statement of material facts.   Accordingly,
pursuant to Local Rule 56.1, the following material facts set
forth in the defendants' statement of material facts are deemed
to be admitted for purposes of this motion.

The plaintiff's medical records reveal a history of skin
rashes and scabies dating back to 1991, prior to his arrival at
USP Allenwood.   *Defendants' Statement of Material Facts at ¶1.*
Medical staff at FCI Milan initially diagnosed the plaintiff with
scabies on October 21, 1991.   *Id.* at ¶2.   He was treated and
reported no other problems.   *Id.* at ¶3.

7

On September 1, 1992, while at FCI Milan, medical records indicate that the plaintiff had contact with an inmate who had scabies. *Id.* at ¶4.  The plaintiff was prescribed medication and returned for follow-up on September 16, 1992. *Id.* at ¶5.  The September 16, 1992 examination was within normal limits. *Id.* at ¶6.

The plaintiff had no other complaints regarding scabies until June 14, 2000, while at USP Terre Haute. *Id.* at ¶7.  At that time, the plaintiff reported at sick call that he had a history of scabies but that his condition currently laid dormant. *Id.* at ¶8.  An examination revealed no evidence of scabies. *Id.* at ¶9.

On October 12, 2000, the plaintiff arrived at USP Allenwood. *Id.* at ¶10.  Upon his arrival, institution medical staff medically screened the plaintiff. *Id.* at ¶11.  The plaintiff made no complaints about scabies during that October 12, 2000 screening. *Id.* at ¶12.  On October 19, 2000, institution medical staff gave the plaintiff a physical examination. *Id.* at ¶13.  The exam revealed no physical evidence of lesions or a rash relating to scabies. *Id.* at ¶14.

From October 2000 through July 2001, institutional medical staff examined the plaintiff on numerous occasions for other medical concerns. *Id.* at ¶15.  During these visits to Health Services, the plaintiff made no specific complaints of scabies. *Id.* at ¶16.

On July 23, 2001, the plaintiff was transferred to another institution on a federal writ. *Id.* at ¶17.  He returned to USP Allenwood on May 14, 2002, and institution medical staff again medically screened him upon his arrival. *Id.* at ¶18.  The medical intake screening report shows that the plaintiff made no complaints of having scabies. *Id.* at ¶19.  Since that time, the plaintiff has been evaluated by the institution physician on a regular basis and has also been examined by other health care providers for sick calls. *Id.* at ¶20.  During these evaluations, the plaintiff did not complain of nor was there any evidence of the plaintiff having scabies. *Id.* at ¶21.

On September 13, 2002, a skin biopsy was completed of the plaintiff's right anterior abdomen due to a skin lesion and itching. *Id.* at ¶22.  The pathological report revealed seborrheic keratosis. *Id.* at ¶23.  Seborrheic keratosis is the presence of benign wart-like growths on the surface of the skin. *Id.* at ¶23 n.1.  On November 18, 2002, a second skin biopsy was completed

due to a crusting lesion found on Plaintiff's left dorsal forearm. *Id.* at ¶24. The diagnosis again revealed seborrheic keratosis. *Id.* at ¶25. Neither one of the pathological reports showed any gross or microscopic findings of scabies. *Id.* at ¶26.

A review of the plaintiff's medical record shows that since May 14, 2002, he has made four complaints of a skin rash. *Id.* at ¶27. Specifically, on May 17, 2002, the plaintiff complained of dry skin and stated that his scabies had recurred. *Id.* at ¶28. The plaintiff claimed that while he was away on a writ, he acquired scabies and was then treated. *Id.* at ¶29. During this visit, his clinical assessment revealed dry skin – rather than evidence of lesions or rashes relating to scabies. *Id.* The plaintiff was offered Benadryl, but refused. *Id.* Staff instructed him to attend sick call if he developed a rash. *Id.*

On December 12, 2003, the plaintiff was seen and examined for a skin rash. *Id.* at ¶30. He was diagnosed with dermatitis, prescribed Prednisone, and instructed to attend sick call if his condition persisted. *Id.* He did not complain about scabies at this time. *Id.*

On December 30, 2003, the plaintiff was seen during sick call and stated that his skin rash disappeared, but he still had

itching. *Id.* at ¶31. He was prescribed Hydroxyzine. *Id.* The plaintiff did not complain of scabies. *Id.*

On March 4, 2004, the plaintiff complained of having itchy skin. *Id.* at ¶32. During his examination, there were no lesions found. *Id.* He was prescribed an antihistamine and informed to report to the clinic if the rash reappeared. *Id.*

Since March 4, 2004, the plaintiff has been seen by Health Services' staff 14 times without any complaints of scabies. *Id.* at ¶33. No diagnosis of scabies has been made since Plaintiff's incarceration at USP Allenwood. *Id.* at ¶34.

Although the plaintiff did not file a response to the defendants' statement of material facts, he did file a declaration. He states in his declaration that while at USP-Terre Haute he made so many complaints of scabies that staff would no longer write his complaints down. He states that after he was transferred to USP-Allenwood he continued to complain that he had scabies. He states that staff told him that he did not have scabies and they ignored his complaints. He states that the only examination done by staff at USP-Allenwood was done by the naked eye and that he did not receive a skin scrape that was

11

microscopically analyzed.  He states that the two biopsies he had

on skin lesions at USP-Allenwood were done to determine whether

the lesions were cancerous and were not done to check for

scabies.  He states that he has made so many complaints of having

scabies that staff refuse to write his complaints down.  The

plaintiff states that he has polycystic kidney disease.  He

states that he needs Qwell lotion to treat his scabies, but

because the lotion is toxic he may not be able to use it once his

kidneys begin to fail.

In order for the plaintiff to establish an Eighth

Amendment medical claim he must establish that defendant Laino

acted with deliberate indifference to his serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97 (1976).

The concept of serious medical need has two components,

one relating to the consequences of a failure to treat and the

other relating to the obviousness of those consequences. *Colburn

v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  The

condition must be such that a failure to treat can be expected to

lead to substantial and unnecessary suffering, injury or death.

*Id.*  Also, the condition must be one that has been diagnosed by a

doctor as requiring treatment or one that is so obvious that a

lay person would easily recognize the need for a doctor's attention. *Id.*

Mere medical malpractice does not give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also "found 'deliberate indifference' to exist when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

Defendant Laino contends that the facts establish that he has not been deliberately indifferent to the plaintiff's medical needs.  He points out that he was not the plaintiff's treating physician and that the plaintiff' has received treatment for his skin complaints.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained the quantum of knowledge that must be possessed by a prison official necessary to satisfy the deliberate indifference standard.  The Court adopted the subjective recklessness standard found in the criminal law as the test for deliberate indifference under the Eighth Amendment.  *Id.* at 839-40.  A prison official may be held liable under the Eighth Amendment only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 847.

The evidence submitted by the defendants indicates that the plaintiff was seen and treated for his complaints of itchy skin.  The evidence submitted by the defendants further indicates that the medical staff who saw and treated the plaintiff did not believe that he had scabies.  The plaintiff has failed to produce evidence from which a reasonable factfinder could conclude that

14

defendant Laino subjectively believed that the plaintiff had scabies. Thus, a reasonable trier or fact could not conclude that defendant Laino was deliberately indifferent to a serious medical need on the part of the plaintiff. Accordingly, defendant Laino is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

Because we agree with defendant Laino that the plaintiff has failed to establish an Eighth Amendment claim against him, we do not address defendant Laino's other arguments for why the claim against him should be dismissed.

III.  FTCA Claims against the United States.

The Federal Tort Claims Act (FTCA) provides, in relevant part, that the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).

Under the FTCA, the law of the place where an act or omission occurs it to be applied. 28 U.S.C. § 1346(b). Thus, in determining whether the United States owes a duty to the plaintiff, whether the United States breached that duty and whether that breach was the proximate cause of the plaintiff's injuries, the law of Pennsylvania ordinarily applies. *Hossic v. United States*, 682 F.Supp. 23, 24-25 (M.D.Pa. 1987). However, 18 U.S.C. § 4042[4] governs the United States' duty of care in cases involving injury to federal prisoners. *Id.* at 25; *Turner v. Miller*, 679 F.Supp. 441, 443 (M.D.Pa. 1987). The duty of care as provided by 18 U.S.C. § 4042 is that of ordinary diligence. *Hossic, supra*, 682 F.Supp. at 25; *Turner, supra*, 679 F.Supp. at 443.

---

4.  18 U.S.C. § 4042(a) provides:
The Bureau of Prisons, under the direction of the Attorney General, shall-
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
> (2) provides suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
> (4) provide technical assistance to State and local governments in the improvement of their correctional systems; and
> (5) provide notice of release of prisoners in accordance with subsections (b) and (c).

In order to establish a prima facie case of medical malpractice, a plaintiff must establish: (1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of that harm. *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990). "Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003). There is a very narrow exception to the requirement of expert testimony "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." *Id.* (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997)).

Defendant United States argues that the plaintiff was treated for scabies in October of 1991 and September of 1992, that he was later diagnosed with various other skin ailments and was treated for those ailments, that there is no evidence that

17

the plaintiff had scabies for the time period he alleges, and that the treatment he received was appropriate. Defendant United States also points out that the plaintiff has not presented any expert testimony, and it argues that the plaintiff can not establish a prima facie case of medical malpractice.

The plaintiff has not presented expert evidence that he in fact has scabies. He has also not presented expert testimony that the visual examination by prison staff falls outside the accepted standard of care. Additionally, the plaintiff argues that the biopsies performed only check for cancer and he intimates that the biopsies would not reveal the presence of scabies. However, the plaintiff has not presented any expert testimony to support that assertion.

Although he contends that expert testimony is not required, the plaintiff also contends that scabies is a microscopic mite that bores under the skin, that it is impossible to see the mite without a skin scrape and analysis under a microscope, and that once the mite has passed through the body and the person has learned to control the itching there are no signs of scabies on the outer skin. These assertions belie the

18

plaintiff's argument that expert testimony is not necessary to establish his claim.

Because the plaintiff has not presented expert testimony that he has scabies or that the examinations and treatment provided by prison staff fall outside the accepted standard of care, we conclude that defendant United States is entitled to summary judgment on the plaintiff's FTCA claims.

IV. Recommendation.

Based on the foregoing, it is recommended that the defendants' motion (doc. 18) to dismiss the amended complaint or, in the alternative, for summary judgment be granted, that the defendants be granted summary judgment, and that the case file be closed.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

DATED: September 27, 2005.

19